# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

**BONNIE JO GRINNELL,**

    **Plaintiff,**

    v.                                                **Civil Action 2:17-cv-270**
                                                                **Judge Algenon L. Marbley**
                                                                **Magistrate Judge Jolson**

**COMMISSIONER OF SOCIAL
SECURITY,**

    **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff Bonnie Jo Grinnell filed this action under 42 U.S.C. § 405(g) seeking review of a partially favorable decision of the Commissioner of Social Security (the "Commissioner"). For the reasons that follow, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

### I.    BACKGROUND

Plaintiff filed her applications for benefits on December 27, 2012, alleging that she has been disabled since July 28, 2011. (Tr. 230–39, 240–45, PAGEID #: 274–83, 284–89). On May 15, 2015, the ALJ issued a partially favorable decision finding that Plaintiff had not become disabled until her fifty-fifth birthday on December 6, 2015. (Tr. 15, PAGEID #: 56). On February 8, 2017, the Appeals Council denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final decision. (Tr. 1–5, PAGEID #: 42–46).

Plaintiff filed this case on April 5, 2017, and the Commissioner filed the administrative record on June 9, 2017. (Doc. 9). Plaintiff filed a Statement of Specific Errors on July 31, 2017 (Doc. 12), and the Commissioner responded on August 30, 2017 (Doc. 14).

### A. Relevant Hearing Testimony

Administrative Law Judge Peter Boylan (the "ALJ") held a video hearing on November 24, 2015. (Tr. 32, PAGEID #: 73). Plaintiff was represented by counsel, and Karen Schneider testified as a vocational expert (the "VE"). (Tr. 34, PAGEID #: 75).

Plaintiff was born on December 7, 1960, and was 54-years-old on the date of the hearing. (Tr. 36, PAGEID #: 77). Plaintiff testified that she has custody of her nine-year-old grandson, who has lived with her since he was fifteen-months-old. (Tr. 37, PAGIED #: 78). She does not have any income but receives state assistance for her grandchild. (*Id.*).

Plaintiff attended special education classes through the tenth grade. (*Id.*). She is able to read and write and maintains a driver's license. (Tr. 37–38, PAGIED #: 78–79). Plaintiff testified that, in a typical week, she drives to the store or to a doctor's appointment. (Tr. 37, PAGIED #: 78).

Plaintiff's last job was working as "a home care attendant taking care of an elderly lady in her home." (Tr. 38, PAGEID #: 79). Plaintiff had worked intermittently as a home care attendant since the 1970s, but her last position ended on January 11, 2011, when the woman's children opted to put her into a nursing facility. (*Id.*). Plaintiff also was a fast food worker from 2002 to 2003, a hand packager from 1996 to 1997 and in 2006, and a sewing machine operator in 2005. (*Id.*).

Plaintiff stated that she was involved in a car accident in July 2011 (Tr. 52, PAGEID #: 93), which led to impairments in her back and neck and which caused headaches (Tr. 38, PAGEID #: 79). Plaintiff stated that she has pain daily, which "feels like somebody beat [her] real bad with a club, like a sledgehammer beating [her]." (Tr, 42, PAGEID #: 83). Plaintiff explained that moving around exacerbates her pain and, for relief, she lies down with an ice pack

three to four times a day for approximately thirty to forty-five minutes. (Tr. 43, PAGEID #: 84). Plaintiff's medications include Percocet for pain, and she has received injections and engaged in physical therapy, including the use of a TENS unit, for her back. (Tr. 39–41, 47, PAGEID #: 80–82, 88).

Plaintiff testified that she can sit for thirty minutes before she has to move, can stand for approximately fifteen or twenty minutes at a time, and can lift five pounds "if [she's] lucky." (Tr. 43, PAGEID #: 84). Plaintiff indicated that she could walk only approximately 500 feet without difficulty. (Tr. 48, PAGEID #: 89). A typical day for Plaintiff includes "get[ting] [her] grandson off to school," "do[ing] what [she] can around the house," and "in the evening[,] … see[ing] that he's fed and got his shower and stuff for bed." (Tr. 44, PAGEID #: 85). Plaintiff shops for groceries, cooks, washes dishes, cleans, and does laundry when she is able. (Tr. 44–45, PAGEID #: 85–86). Plaintiff testified that her grandson helps her by vacuuming, taking out the trash, and doing laundry occasionally. (Tr. 49, PAGEID #: 90). Plaintiff plays games and uses Facebook on her tablet. (Tr. 46, PAGEID #: 87).

The VE testified that a hypothetical individual with Plaintiff's age, education, and work experience who is limited to light levels of exertion and can occasionally stoop, crouch, crawl, climb ramps and stairs, but can never climb ladders, ropes, or scaffolds, and must avoid concentrated exposure to fumes, odors, dust, gases, and poor ventilation could perform Plaintiff's past job as a fast food worker and other light unskilled work, such as inspector, sorter, and merchandise marker. (Tr. 54–56, PAGEID #: 95–97). The VE further testified that if that hypothetical individual were limited to simple work-related decisions, superficial interaction with others, and tolerating occasional changes in a work setting, the individual could still be a fast food worker and perform other work, such as inspector, sorter, and merchandise marker.

3

(Tr. 56–57, PAGEID #: 98–99). Conversely, the VE stated that the hypothetical individual with those functional limitations and vocational factors would be precluded for competitive employment if she were off task 20 percent of the workday, will miss two days of work in a month, and needs to lie down and/or take a break three to four times a day. (Tr. 57, PAGEID #: 98).

The closing remarks of Plaintiff's counsel included that, although she is "not arguing the listing here in this case," the record reflects an individual with "rather significant lumbar issues…." (Tr. 60, PAGEID #: 101) (indicating that she opted not to argue for a listing "because [she] think[s] [they] don't have enough established ongoing").

**B. The ALJ's Decision**

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through March 31, 2014, and had not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. 17, PAGEID #: 58). The ALJ found that Plaintiff suffers from the severe impairment of degenerative disc disease, obesity, and a pulmonary disorder. (*Id.*).

Concerning Plaintiff's obesity, the ALJ stated:

> The claimant, who is 63 inches tall, has weighed approximately 180 to 190 pounds since her alleged onset date (*See, e.g.*, Exhibits C7F, p. 5, 11, 13, 39–41; C14F, p. 2). This equates to a BMI range between 31.9 and 33.7, which places the claimant into the mildest range of clinical obesity as defined by the diagnostic medical criteria discussed in Social Security Ruling 02-1p.

(Tr. 21, PAGEID #: 62, n.4). The ALJ noted recurrent findings of a "mild level of clinical obesity" (Tr. 21, PAGEID #: 62), addressed numerous ailments exacerbated by obesity, such as breathing difficulties, an inability to stand for long periods of time, and knee pain (*see generally* Tr. 17–24, PAGEID # 58–65), and relied on medical opinions noting Plaintiff's weight (Tr. 19–20, PAGEID #: 60–61).

4

The ALJ found Plaintiff does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19–20, PAGEID #: 60–61). Relevant to this case, the ALJ's decision specifically addressed disorders of the spine in Listing 1.04. (Tr. 19, PAGEID #: 60). The ALJ found that:

> [m]edical evidence does not support a finding that the claimant meets or equals the criteria set out in listing 1.04. There is no radiological or clinical evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Medical imaging has instead characterized the claimant's degenerative changes as mild to moderate in nature and neuromotor findings have remained largely unremarkable throughout the vast majority of the record.

(Tr. 19–20, PAGEID #: 60–61) (citations omitted). The ALJ also found that record evidence failed to demonstrate that Plaintiff satisfied Listing 3.02, which concerns chronic pulmonary insufficiency. (Tr. 20, PAGEID #: 61).

After consideration of the entire record, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.976(b), except for Plaintiff can only occasionally climb ramps and stairs, stoop, crouch, and crawl and can never climb, ladders, ropes, or scaffolds. (Tr. 20, PAGEID #: 61). The ALJ also found that Plaintiff must avoid concentrated exposure to fumes, dusts, gases, and poor ventilation. (*Id.*).

The ALJ found that Plaintiff has been unable to perform any past relevant work, and her age category changed from closely approaching advanced age to an individual of advanced age on December 6, 2015. (Tr. 24, PAGEID #: 65). The ALJ determined that Plaintiff has a limited education, is able to communicate in English, and that transferability of job skills was not material to the disability determination. (*Id.*).

Ultimately, the ALJ denied Plaintiff's application for a period of disability and disability insurance benefits because she was not disabled under the Social Security Act through March 31, 2014, the date last insured. (Tr. 25, PAGEID #: 66). Concerning Plaintiff's application for supplemental security income, the ALJ determined Plaintiff *was* disabled beginning on December 6, 2015, when her age category changed. (Tr. 25–26, PAGEID #: 66–67). The ALJ found that, prior to December 6, 2015, considering Plaintiff's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that Plaintiff could have performed. (Tr. 24, PAGEID #: 65).

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). The Commissioner's findings of fact must also be based upon the record as a whole. *Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985). To that end, the Court must "take into account whatever in the record fairly detracts from [the] weight" of the Commissioner's decision. *Rhodes v. Comm'r of Soc. Sec.*, No. 1:13-cv-1147, 2015 WL 4881574, at *2 (S.D. Ohio Aug. 17, 2015).

## III.    DISCUSSION

Plaintiff alleges two errors. (*See generally* Doc. 12). First, Plaintiff asserts that the ALJ erred at step three of the disability evaluation process in failing to give sufficient consideration to whether her impairments met or equaled Listing 1.04(A) prior to December 6, 2015. (*Id*. at 7).

Next, Plaintiff argues that the ALJ erred in failing to consider the impact of her severe impairment of obesity at each step of the sequential evaluation. (*Id.*).

**A. Step-Three Analysis**

The Court first considers Plaintiff's argument that the ALJ erred in failing to give sufficient consideration to whether her impairments met or equaled Listing 1.04(A) prior to December 6, 2015. Stated simply, Plaintiff asserts the record evidence establishes that she satisfies the listing. This Court disagrees.

The third step of the disability evaluation process asks the ALJ to compare the claimant's impairments with an enumerated list of medical conditions found in the Listing of Impairments within 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* 20 C.F.R. § 416.920(a)(4)(iii); *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 491 (6th Cir. 2010). The Listing of Impairments recites a number of ailments which the Social Security Administration has deemed "severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience." 20 C.F.R. § 416.925(a). Each listing describes "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 416.925(c)(3). The claimant bears the burden of showing that her impairment meets or medically equals a listing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

Listing 1.04(A), which concerns spinal disorders, provides:

1.04 Disorders of the spine (e.g. herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. Pt. 404, Sbpt P, App. 1, § 1.04. Thus, for Plaintiff to have been found disabled at step three, she must have had a spinal disorder that resulted in compromise of a nerve root with neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (muscle weakness) accompanied by a sensory or reflex loss, and, to the extent Plaintiff's impairment involves her lower back, a positive straight-leg raising test. *Id.*

Here, the ALJ stated explicitly that he considered whether Plaintiff's impairments met or equaled the requirements for the listings, despite the fact that "claimant's representative did not argue that any of the listings were applicable during the hearing…." (Tr. 19, PAGEID #: 60); (*see also* Tr. 60, PAGEID #: 101) (closing remarks of Plaintiff's counsel, indicating that she is "not arguing the listing here in this case" because she didn't believe they "ha[d] enough")). The ALJ's decision provides, in relevant part:

> Medical evidence does not support a finding that the claimant meets or equals the criteria set out in listing 1.04. There is no radiological or clinical evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. Medical imaging has instead characterized the degenerative changes as mild to moderate in nature and neuromotor findings have remained largely unremarkable throughout the cast majority of the record.

(Tr. 19–20, PAGEID #: 60–61) (citing Exhibits C1F, p. 3–4; C2F, p. 4–5, 26; C3F, p. 13–16, 39–40, 51–56, 83–86, 132, 166–67; C4F, p. 18–31; C5F, p. 2–3; C10F, p. 26–31; C12F, p. 36–42, 50; C15F, p. 16). The ALJ also relied upon physicians at the initial and reconsideration levels who found Plaintiff not disabled after considering Plaintiff's impairments in conjunction with, *inter alia*, Listing 1.04. (*See* Tr. 65–116, PAGEID #: 107–58).

The evidence supports the ALJ's finding. Plaintiff presents no evidence of a compromise of a nerve root with neuro-anatomic distribution of pain and, as Defendant explains, Plaintiff's subjective complaints alone may not form the basis for such a finding. *See* 20 C.F.R. Pt. 404,

8

Sbpt P, App. 1, § 1.04(D) ("[P]hysical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation."); (*see also* Tr. 21, PAGEID #: 62, n.3 (the ALJ noting that "[t]he January 2013 MRI of the lumbar spine indicated the disc protrusion abutted the left L5 nerve root, but there was no evidence of any definitive impingement or compression")). Plaintiff's range of motion of the spine often went untested (*see, e.g.*, Tr. 346, PAGEID #: 392 (July 19, 2012 exam); Tr. 345, PAGEID #: 391 (September 25, 2012 exam); Tr. 341, PAGEID #: 387 (November 21, 2012 exam)), and examinations revealed generally normal or almost normal strength in her extremities (*see, e.g.*, Tr. 346, PAGEID #: 392 (noting upper extremity strength is normal at 5/5 and, in the lower extremities, strength is 4+ on the left, 4+ to 5- on the right); Tr. 345, PAGEID #: 391 (finding bilateral upper extremity strength is 5/5); Tr. 341, PAGEID #: 387 (noting bilateral upper and lower extremity strength is 5/5)).

Although there is some evidence that Plaintiff has sensory or reflex loss (*see, e.g.*, Tr. 346, PAGEID #: 392 (finding upper extremity sensation was intact but decreased sensation in Plaintiff's left lateral thigh)) and some positive straight-leg raising tests (*see, e.g.*, Tr. 343, PAGEID #: 389), Plaintiff fails to satisfy all of requirements for the listing. *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004); (*see* Doc. 12 at 10 (acknowledging that "perhaps" Plaintiff did not satisfy the requirements of the listing "simultaneous[ly]"). Based on the foregoing, Plaintiff failed to satisfy her burden at step three, and her first statement of error is without merit.

### B. Consideration of Plaintiff's Obesity

Plaintiff next argues the ALJ did not consider her obesity as required by the regulations. Social Security Ruling 02-01p, 2000 WL 628049 (Sept. 12, 2002), explains the Administration's policy and protocol on evaluating obesity. "Obesity is a complex, chronic disease characterized by excessive accumulation of body fat." SSR 02-01p. The Ruling further recognizes obesity as "a risk factor that increases an individual's chances of developing impairments in most body systems" and notes that obesity "commonly leads to, and often complicates, chronic diseases of the cardiovascular, respiratory, and musculoskeletal body symptoms." *Id*. at *3. Additionally, "obesity may also cause or contribute to mental impairments such as depression." *Id*. Despite obesity being a risk factor, the Ruling cautions that it "does not mean that individuals with obesity necessarily have any of these impairments." *Id*. The Ruling directs ALJs to consider obesity in determining (1) whether a claimant has a medical impairment, (2) whether that medical impairment is severe, (3) whether the claimant's impairment meets or equals a listed impairment, and (4) whether the claimant could perform her past work or other work existing in significant numbers. *Id.*

Here, the ALJ considered Plaintiff's obesity more than once. The ALJ found it to be a severe impairment (Tr. 17, PAGEID #: 58), and further remarked:

> The claimant, who is 63 inches tall, has weighed approximately 180 to 190 pounds since her alleged onset date (*See, e.g.*, Exhibits C7F, p. 5, 11, 13, 39–41; C14F, p. 2). This equates to a BMI range between 31.9 and 33.7, which places the claimant into the mildest range of clinical obesity as defined by the diagnostic medical criteria discussed in Social Security Ruling 02-1p.

(Tr. 21, PAGEID #: 62, n.4). The ALJ also considered the numerous ailments that obesity can exacerbate, like breathing difficulties, an inability to stand for long periods of time, and knee pain. (*See generally* Tr. 17–24, PAGEID # 58–65). Finally, the ALJ noted recurrent findings of

a "mild level of clinical obesity" (Tr. 21, PAGEID #: 62), and cited medical opinions noting Plaintiff's weight (Tr. 19–20, PAGEID #: 60–61 (citing *e.g.*, Exhibit C1F, Tr. 341, PAGEID #: 387 (noting height of 5'3" and weight of 178); Tr. 343, PAGEID #: 389 (same); Tr. 345, PAGEID #: 391 (same); Tr. 347, PAGEID #: 393 (noting height of 5'3" and weight of 183))). The Sixth Circuit has found such reliance relevant when analyzing an ALJ's consideration of obesity. *See Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2008) (upholding denial of benefits where ALJ "made explicit mention of [plaintiff's] obesity in his finding of facts" and credited the opinions of experts who considered plaintiff's obesity). Accordingly, the ALJ's consideration of obesity was sufficient.

## IV. CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that Plaintiff's Statement of Errors be **OVERRULED**, and that judgment be entered in favor of Defendant.

## V. PROCEDURE ON OBJECTIONS

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review the Report and Recommendation *de novo*, and also

operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.


Date: November 20, 2017	/s/ Kimberly A. Jolson
	KIMBERLY A. JOLSON
	UNITED STATES MAGISTRATE JUDGE